NASHVILLE TRUST CO. v. WINTERS et al.—130 S. W. (2d), 152.

Middle Section. March 25, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

Richard S. West, of Nashville, for appellant Eugene M. Winters.

Goodpasture & Carpenter, of Nashville, for appellees G. N. Winters et al.

Leroy McGregor, of Nashville, for appellee guardian.

CROWNOVER, J.   The questions involved on appeal in this case are whether the reformation of a quitclaim deed on the ground of mistake can be decreed, and whether the cross-complainant Eugene M. Winters can recover a house and lot devised to him by his father W. M. Winters under the doctrine of election.

The original bill in this cause was filed by the Nashville Trust Company, guardian of the five minor Fulcher children, against Eugene M. Winters, G. N. Winters, J. W. Winters, and Fannie Louise Patton (all devisees under the will of W. M. Winters).   The said wards are the children of a deceased sister of the four defendants.

The bill alleged that the complainant Trust Company was the guardian for the five Fulcher children; that W. M. Winters had devised four lots to the defendants Winters which he did not own, which were owned by his children the defendants and the Fulcher children; and that the four defendants had quitclaimed their interest to each devisee in said property (except lot No. 212 Foster Street), and had agreed to pay the Fulcher children $150 for their interest in each of those three lots, and asked the court to confirm this agreement; and a recovery was sought of a one-fifth interest in the house and lot at No. 212 Foster Street under the will of their great grandfather, George W. Winters, after the falling in of the life estate of their grandfather, W. M. Winters.   Copies of the wills of George W. Winters and W. M. Winters and the quitclaim deed were filed.

Eugene M. Winters filed his answer admitting the execution of the wills, the devises, and the execution of the quitclaim deed, and filed his answer as a cross-bill against G. N. Winters, J. W. Winters and Fannie Louise Patton, and alleged that the quitclaim deed was executed to carry out the terms of the will of W. M. Winters, and asked the court to reform said quitclaim deed executed by himself and the three cross-defendants, by which they attempted to adjust their rights in three pieces of property, so as to include the house and lot known as the No. 212 Foster Street property, which he alleged was inadvertently omitted from the quitclaim deed.

G. N. Winters, J. W. Winters and Mrs. Fannie Louise Patton answered the cross-bill and admitted the execution of the wills and the quitclaim deed, but denied that this property at 212 Foster Street was inadvertently left out of the quitclaim deed, and denied that the cross-complainant was entitled to any relief.

George W. Winters, the grandfather of the four defendants and of the mother of the minors, owned considerable property and died in 1915 leaving a will devising a life estate to his wife in the house and

lot at No. 212 Foster Street; at her death, then to his son Jesse T. Winters for life, and at his death to his children.

He devised to his son William M. Winters for life, to descend at his death to his children, a house and lot at No. 213 Foster Street, one at No. 1917 Delta Avenue, and one at No. 1919 Delta Avenue.

The will further provided that in the event of the death of any one of his children, without issue, the property devised to said child should go to the survivor for life, and at his death to his issue.

Jesse T. Winters had no children and predeceased W. M. Winters, hence W. M. Winters was vested with a life estate in the 212 Foster Street property.

W. M. Winters thus had a life estate in 212 and 213 Foster Street and 1917 and 1919 Delta Avenue.

W. M. Winters died in 1934 leaving a will in which he undertook to devise 212 and 213 Foster Street to his son Eugene M. Winters, 1917 Delta Avenue to his son J. W. Winters, and 1919 Delta Avenue to his son G. W. Winters. He devised other specific property to which he held a fee simple title to his daughter Mrs. Patton, the Fulcher minors, and his other children.

Eugene M. Winters, J. W. Winters, G. N. Winters, and Fannie Louise Patton (each the owner of a ⅕ interest in said two pieces of property on Foster Street and two pieces on Delta Avenue under the will of their grandfather George W. Winters, which their father W. M. Winters undertook to devise to them) executed a quitclaim deed conveying to Eugene M. Winters a ⅘ interest in 213 Foster Street, to J. W. Winters a ⅘ interest in 1917 Delta Avenue, and to G. W. Winters a ⅘ interest in 1919 Delta Avenue, but the 212 Foster Street property was not mentioned, and it was not intended that said property should be included in the deed.

Written offers were made to the guardian to purchase the minors' ⅕ interest in each piece of property conveyed in the quitclaim deed for $150 each.

The original bill in this cause asks the court to authorize a sale of said interests in said property by the minors, and seeks a recovery of a ⅕ interest in the 212 Foster Street property on the ground that W. M. Winters had only a life estate in the same and could not devise it, that the fee vested in the heirs of W. M. Winters under the will of George W. Winters.

The defendant Eugene M. Winters filed the cross-bill above mentioned claiming the 212 Foster Street property under the W. M. Winters will, and asked that the quitclaim deed be "amended so as to include No. 212 Foster Street" as the quitclaim deed was executed to carry out the terms of W. M. Winters' will.

G. N. Winters, J. W. Winters, and Mrs. Patton testified that there had been no intention on the part of any of them to include No. 212

Foster Street in the quitclaim deed and that it was not inadvertently left out of said deed.

Eugene M. Winters testified that when the quitclaim deed was executed he thought he owned the 212 Foster Street property in fee under W. M. Winters' will; that the filing of this bill was the first intimation he had that his father did not own the fee in this lot; that the quitclaim deed covered the 213 Foster Street and the 1917 and 1919 Delta Avenue properties; that he knew when he signed it that it did not include 212 Foster Street.

The other devisees testified that it was not included, and that nothing was said about it, and that they did not intend to convey it at the time.

The Chancellor found that W. M. Winters took only a life estate in said four pieces of property, and that his attempt to devise the same was void and of no force and effect; that the quitclaim deed executed by the four adult parties to this suit did not contain, either expressly or by inference, the tract of real estate in question, known as the 212 Foster Street property; that the omission of same was not inadvertent or a mistake of the parties; and that the cross-bill of Eugene M. Winters was met and denied by the answers thereto and was not sustained by the proof. He found that said property was owned in fee, $\frac{1}{5}$ each, by the minors and the four adult parties. He decreed that the cross-bill be dismissed and the tract of land be sold for partition.

Eugene M. Winters excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in refusing to reform the quitclaim deed to include the property at No. 212 Foster Street.

(2) The Chancellor erred in failing to hold that Eugene M. Winters was entitled to recover the 212 Foster Street property and to have the same included in the deed by the doctrine of election.

1. The quitclaim deed cannot be reformed, as there is no evidence of mistake of fact in failing to include the property at No. 212 Foster Street. The uncontroverted evidence is that the four parties to the deed, adults, executed this deed, and nothing was said about this lot, and it was not the intention of the parties to include it in the deed.

Eugene M. Winters testified that at the time he executed the quitclaim deed he thought he had obtained a fee simple title to lot No. 212 under his father's will; that he thought his father had owned No. 212; but he has since discovered that his father took only a life estate in it under the will of George W. Winters and the title to same has vested in the parties to this suit. He admitted that at the time of the execution of the deed he knew that it did not include No. 212, but said he thought he owned it.

"If the instrument is drawn exactly as was intended, natur-

ally there can be no relief by way of reformation. Webster v. Stark [78 Tenn., 406], 10 Lea, [406] 414.'' Alexander v. Shapard, 146 Tenn., 90, 240 S. W., 287, 291.

In Pittsburg Lumber Co. v. Shell, 136 Tenn., 466, 189 S. W., 879, 880, the Supreme Court said:

''Reformation of a written instrument will not be decreed where the instrument accords with the purpose of the parties at the time of its execution. . . . They are not entitled to such relief merely because their intentions were influenced by mistaken considerations. The question always is, What did the parties intend at the time they contracted? not what they would have done if they had been better informed.''

The first assignment of error must therefore be overruled.

2. The second assignment raises the question whether Eugene M. Winters can recover the 212 Foster street property under the doctrine of election.

There can be no doubt about his recovery under the doctrine of election if he has properly raised the question in his cross-bill.

''The doctrine is thus laid down in 2 Jarm. Wills, p. 415: 'The doctrine of election may be thus stated: That he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it.' '' Colvert v. Wood, 93 Tenn., 454, 463, 25 S. W., 963, 965.

''The true statement of the doctrine is that election applies when property of the testator is attempted to be given to the devisee or legatee at the same time the testator attempts to give away the property of the devisee or legatee to another by will. The devisee or legatee, in all such cases, must elect whether to claim his own property, or that given him by the testator; and when he elects to take the one he surrenders the other, so far as is necessary to make up the share of any devisee or legatee that may thus be diminished or destroyed by his election against the will.'' Colvert v. Wood, 93 Tenn., 454, 25 S. W., 963, 966.

''This doctrine of election, properly applied, is confined to narrow limits. It rests upon the equitable ground that a party cannot be permitted to claim inconsistent rights respecting the same subject matter, and, if he claim an interest under an instrument, he must give full effect to the instrument so far as he can. The typical case stated to illustrate the rule is where a testator gives to A certain property, and in the same will gives a third person property belonging to A. In such case A must elect between the two. If he accepts the gift to himself under the will, he must affirm and carry out the gift of his own property to the third person. Parkey v. Ramsey, 111 Tenn., 302, 76 S. W., 812, 813.'' 16 Michie's Digest of Tennessee Re-

ports (2 Ed.), 86-87, sec. 384; Sizer's Prichard on Wills & Executors, sec. 473; 2 Redfield on Wills, 737 to 755.

The doctrine of election applies to minors, but the guardian cannot make the election, as the election is a judicial act and belongs to the court having jurisdiction of the case. Wright v. West, 2 Lea, 78, 82, 31 Am. Rep., 586; 69 C. J., 1109.

This is a clear case of the election to take under the will and the acceptance of these lots by the respective devisees under the will, and the devisees, having accepted the property devised to them, cannot refuse to comply with the terms of the will devising this lot to Eugene M. Winters.

But it is insisted that this question is first raised in this court on appeal. It is true that Eugene M. Winters did not say in so many words that the other devisees had elected and accepted their devises, but he went off on the proposition that this lot should be included in the quitclaim deed and to that extent the quitclaim deed should be amended, meaning thereby that it should be reformed.

But we think that the whole suit was predicated upon the doctrine of election, and the whole matter is fully set out in the original bill, Eugene M. Winters' cross-bill, and the answers of the respective devisees. Copies of the wills and the quitclaim deed are filed in evidence, and under the testimony each devisee went into possession of the property devised to him or her by W. M. Winters, showing conclusively that they had elected to take under the will, had accepted their devises and had taken possession of the same. The record shows that after the respective devisees had taken possession of the property they found that W. M. Winters did not own these four lots and that his children (the defendants) and grandchildren owned the same under the will of George W. Winters. They attempted to perfect each one's title to three of the lots by executing a quitclaim deed, which recited that W. M. Winters had attempted to devise the property to the respective devisees and it was later found that he had no title to the property, and this quitclaim deed was executed for the purpose expressed in said deed, which is as follows:

"Whereas, it is the purpose of this instrument for the adult children of the deceased W. M. Winters to carry out the expressed intention of their father as far as they are able to do so in the disposition of the property devised under the will as above set out."

In fact, Eugene M. Winters' cross-bill seeking to reform the deed is predicated upon the doctrine of election, and that is the basis of his attempt to have the quitclaim deed reformed—"to carry out the terms of the will." He is asking this court to decree the title in him by reforming the quitclaim deed. We think the title is in him by virtue of the doctrine of election, and this relief can be granted under his prayer for general relief; therefore this assignment of error must be sustained, and we hold that he has the title to this house and lot in

so far as the adult devisees are concerned, and the decree of the Chancellor in this respect is reversed.

But it further appears that the adult devisees and parties in interest have agreed to pay the minor heirs $150 for their interest in each of three of the lots, described in the quitclaim deed, and the Chancellor was correct in confirming the sale in that respect, which was not appealed from.

The minors were not made parties to the cross-bill and it appears from the statement of counsel in open court that Eugene M. Winters is not contesting the minors' interest in this house and lot, therefore this 212 Foster Street property will be sold as decreed by the Chancellor and the Fulcher minors will be paid $\frac{1}{5}$ of the proceeds, after the value of the improvements has been deducted.

The cause will be remanded to the Chancery Court for a reference as decreed by the Chancellor. The costs of the appeal are adjudged against the cross-defendants, but the costs that accrued in the lower court will await the final determination of the case.

Faw, P. J., and Felts, J., concur.